## City of Sacramento *v.* Fowle.

1. Under the Process Act of California, enacting that in a suit against a corporation the summons may be served on "the president or other head of the corporation," service is properly made on the president of a board of trustees, by whom it is declared in the city charter that the city shall be "governed," and which president of the board of trustees, the charter further declares, shall be "general executive officer of the city government, head of the police, and general executive head of the city."

2. When no defence has been made to the liability of a city for its bonds in a State court having general common-law jurisdiction in the place where the city was sued on them, no question can be raised here, on error to a judgment obtained in a Circuit Court of the United States, on the record of the judgment of such State court.

ERROR to the Circuit Court for the District of California; the case being thus:

The city of Sacramento having been incorporated March 26th, 1851,* was reincorporated by act of April 25th, 1863.†

The act enacts as follows:

"§ 2. The city of Sacramento shall be *governed* by a board of trustees consisting of three members.

"§ 3. The officers of the city of Sacramento shall be a first, second, and third trustee, who shall constitute a board of trustees.

"§ 4. The board of trustees shall be designated as follows: The first trustee shall be president of the board of trustees and *general executive officer of the city government.*

"§ 5. The president of the board of trustees shall be the head of the police *and general executive head of the city.*"

No mayor is mentioned in the charter.

This statute being in force, Mrs. Fowle, owning certain unpaid bonds of the city, issued in October, 1852, under the former incorporation, brought suit in 1866 against the city, in the District Court of the twelfth judicial district of the State of California, *a court of general common-law jurisdiction,* to obtain judgment on them.

The California Process Act‡ (also in force when suit was brought) enacts that if a suit be against a corporation, the summons shall be served by delivering a copy thereof "to the president, or other *head of the corporation,* secretary, cashier, or managing agent thereof."

The officer to whom the writ was directed, returned it with a certificate that he had served it on the defendant, the city of Sacramento, by delivering a copy of the summons,

---

* Statutes of California 1851, p. 391.    † Id. 1863, p. 415.

‡ Compiled Laws of California, § 29, p. 523.

with the complaint attached, to Charles Swift, *president of the board of trustees of said defendant, whom he knew to be such president and head of said corporation.*

No defence was made to the suit, and judgment was entered by default, in favor of the plaintiff, in March, 1867, for $40,000.

On this judgment Mrs. Fowle brought suit in the Circuit Court of the United States for the District of California, and a properly certified copy of the judgment roll in the former case being offered by the plaintiff in evidence, it was objected to by the defendant, on the grounds—

1st. That it appeared from the said roll that the defendant had not been served with summons as required by statute; the president of the board of trustees not being the president of the city corporation.

2d. That by the terms of the original charter of Sacramento, in force when the bonds sued on were issued, the charter was liable to be altered from time to time, or repealed, and because, in 1863, it had been altered in such a way as that while it was enacted that the city might be sued by its name on any bond, it was provided that this should be only when such bond had been made after April 25th, 1863: which was not the case here.

The court below admitted the evidence, and judgment was given for the plaintiff. The city now brought the case here on exception to the evidence.

*Messrs. A. A. Sargent and D. F. Lake, for the plaintiff in error :*

1. The president of the board of trustees was not the president of the corporation. The corporation had no president, and there was no "head" to the corporation, within the meaning of that word, as used in the statute, except the board of trustees sitting as such; each officer had distinct duties prescribed for him in the charter,* and each was head of his distinct department.

---

* Article II, §§ 3–16.

The summons not having been served on the defendant. as provided by statute, the default of the defendant in the Twelfth District Court was irregularly entered, and the judgment was void.*

2. A municipal corporation cannot be sued except as allowed to be by statute;† and under the charter of Sacramento, the bondholders took, subject to the contingency, that the charter might be so altered that they must look to payment of their claims without an action of the ordinary kind at law against the city.

*Mr. H. F. Durant, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

That the summons was served in conformity with the California Process Act we think quite clear.

If the president of the board of trustees is not the " head of the corporation," it is difficult to see who is, for no other executive or head officer is named in the charter. Indeed, it would seem that a service upon any officer of less grade would not be a compliance with the statute. The legislature doubtless intended, in pursuance of a wise public policy, to guard the city from the consequences which have sometimes followed legislation permitting suits to be prosecuted against municipal corporations where process was served upon any officer of the city government. It is easy to see that in such a case the public interests might suffer, but no reasonable apprehension could be indulged in this regard if the chief officer intrusted by the people with the management of their affairs was notified of the pendency of judicial proceedings.

The decision on this point disposes of the case, for if the service was in conformity with the statute, the court had jurisdiction of the party and the subject-matter, and the judgment is conclusive against the city, until reversed on direct proceedings, by the Supreme Court of the State.

---

* Galpin *v.* Page, 18 Wallace, 350.

† Mitchell *v.* City of Rockland, 52 Maine, 118; Sharp *v.* County of Contra Costa, 34 California, 284; Webster *v.* Reid, 11 Howard, 437.

It is hardly necessary to say that the question of the original liability of the city on the bonds sued upon is not open here. If the city had any defence to make to them, it should have been made when suit was brought against it in the State court.

JUDGMENT AFFIRMED.