## ARCHER et al. v. IMPERIAL MACH. CO.

(Circuit Court of Appeals, Second Circuit. June 14, 1913.)

No. 251.

1. PATENTS (§ 328*)—INVENTION—MACHINE FOR PEELING POTATOES.

The Archer patent No. 999,478 for a machine for peeling potatoes, consisting of a metal cylinder having a revolving metal disk near the bottom by which the potatoes are moved, and its inner surface coated with a granulated abrading material, such as emery, is void for lack of invention; the only material change over the machines of the prior art being the substitution of well-known abrading material for roughened or striated surfaces, which produced better results but not sufficiently better to constitute invention.

2. PATENTS (§ 21*)—INVENTION—SUBSTITUTION OF MATERIALS.

A change of material may evidence invention, but in order to do so it must produce a result so much better as to be novel and unexpected.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 23; Dec. Dig. § 21.*]

Coxe, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Samuel B. Archer and others against the Imperial Machine Company. Decree for defendant, and complainants appeal. Affirmed.

For opinion below, see 202 Fed. 962.

---

· For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

207 F.—6

Duell, Warfield & Duell, of New York City, for appellants.

Samuel B. Archer, of Saratoga Springs, N. Y., in pro. per.

H. S. MacKaye, of New York City (C. H. Duell, F. P. Warfield, and H. S. Duell, all of New York City, and R. W. France, of Sidney, N. Y., of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge.    [1] The patent shows first a metal cylinder, preferably of iron or steel, which is open at the top and in which the potatoes are placed. The cylinder has openings at the bottom to allow water and peelings to pass out. At the bottom of the cylinder is a metal disk upon which the potatoes rest and which revolves at an angle to the vertical walls of the cylinder. The cylinder is lined with patentee's "improved granulated abrading material." The "articles to be peeled are constantly agitated (through the rotation of the disk) in such a manner as to bring all the parts of every article in contact with the abrading surfaces," so that the peel is removed by a scouring action.

Similar cylinders and revolving disks having abrading surfaces of punctured metal, and of striated or grooved metal, were old in the art, and the patentee refers to them, stating that his invention "relates essentially to the abrading material used in lining or coating such parts of the machine as come in contact with the article to be peeled." He states that he believes himself to be "first to use granulated flint, emery, corundum, carborundum, and other like substances as an *abrading surface for this class of machines.*"

The record shows that it was old in the art to secure an abrading surface by the attachment of emery and the like to a metal backing or base, and the district judge held that the employment of a granulated surface made of emery or any similar substance for the cylinder and disk of these machines instead of the roughened metal already in use was a "mere obvious equivalent for other methods of roughening the surface."

The patentee asserts that the articles to be peeled are agitated against the abrading surfaces by centrifugal force when the disk is rotated. We find it difficult to understand how such rotation, when many potatoes are in the cylinder, can produce the successive displacement necessary to bring each potato in turn to an abrading surface. In other machines, as the record shows, this movement is accomplished by a so-called "agitator," or hump, located either on disk or cylinder. Such agitator is not shown in the patent in suit. We do not ground our decision on the absence of that element, which seems to have been well-known in the art, but find lack of patentable invention, as Judge Holt did, in the mere substitution of material for the abrading surfaces; the substituted material not itself being new.

The "mere carrying forward of * * * more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means *with better results,* is not such invention as will sustain a patent." Smith v. Nichols, 21 Wall. 119, 22 L. Ed. 566.

[2] Sometimes, it is true, a change of material will produce a novel, an unexpected result, which might evidence invention. It is further argued that the result here, although not strictly novel, is so notably and vastly superior to the old one that it may be properly classed as an unexpected result. It was upon this theory that the Board of Examiners in Chief granted the patent. Their opinion is quoted in Judge Holt's. We think they were misled as to the facts because they had before them the results of tests made by the Navy Department, without being informed, as we are by this record, of the circumstances under which the tests were made. The reported test gave for one of plaintiff's machines a loss of weight in paring of 7.88 per cent., the potatoes of all shapes and sizes being cleaned evenly, while one of defendant's machines with striated metal on the surface of disk and cylinder showed 25.52 per cent. loss of weight in paring, while some of the potatoes were not peeled at all, others were peeled twice, and all of them much worn down and bruised. Such an enormously better result seemed to the board to be one which might fairly be classed as "unexpected." It appears by the proof in this record, however, that in this particular machine submitted for test by defendant the "agitator" had been made very much larger than usual in the hope that it would produce better results. Such change of size on the contrary operated disastrously. The test of another of defendant's machines with normal agitator brought the loss in paring down to 10.85 per cent.

The change effected by substituting well-known granulated surfaces for those of roughened or striated metal does, as this record shows, produce "better results"; but we cannot see that they are so much better that they can be fairly classified as novel or unexpected, and, unless they are such, the substitution of emery or the like for roughened metal does not under the authorities evidence invention.

Decree affirmed, with costs.

COXE, Circuit Judge (dissenting). The novel feature of Archer's combination is the "granulated abradant" which was first applied by him to the potato peeling art. It was this substitution, simple in itself, which made a commercially successful potato peeler. The prior machines, using striated metal and similar devices, were practical failures. As pointed out in the opinion of the court, the fact that the patented structure does not show "agitators" is unimportant for the reason that they were well-known devices for bringing all the potatoes against the abrading surface. To Archer belongs the credit of using "granulated flint, emery, corundum, carborundum, and other like substances as an abrading surface" in potato peeling machines. This was not an obvious thing to do; to the ordinary lay mind it seems chimerical, but it solved the problem.

Even if the question of invention were involved in doubt, I think it should be solved in favor of the patent.