BALLARDVALE SPRINGS CO. v. UNITED METAL SEAL CO.

(Circuit Court of Appeals, First Circuit. September 12, 1918.)

No. 1341.

1. PATENTS &#9901;328—VALIDITY—CAP FOR BOTTLES.

The Recht patent, No. 796,356, for improvement in caps for bottles, *held* void for lack of patentable novelty, in view of the prior art.

2. PATENTS &#9901;42—IMPROVEMENT PATENTS—VALIDITY.

In considering the claims of a first improver upon a specific device, when asserted against third persons, it is often useful to inquire whether his claims could have been asserted by the improver against the inventor and patentee of the specific device upon which the improvement was made.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by the United Metal Seal Company against the Ballardvale Springs Company. Decree for complainant, and defendant appeals. Reversed.

James Q. Rice, of New York City (Alfred H. Hildreth, of Boston, Mass., on the brief), for appellant.

Harrison F. Lyman, of Boston, Mass. (Fish, Richardson & Neave, of Boston, Mass., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge. This is an appeal from a decree of the District Court, holding valid and infringed claims 1 and 5 of letters patent to F. Recht, No. 796,356, August 1, 1905, for improvements in caps for bottles.

Claim 1 is typical:

"1. The combination, with a metal cap adapted to be locked over the mouth of a bottle, of a tenacious metal disk contained within the cap, and a disk of compressible material interposed between the cap and metal disk, the whole organized to effect a sealing contact between the metal contained in the cap and the mouth of the bottle."

The "tenacious metal disk" is the element claimed to be new; the other elements being contained in prior art devices.

The manufacturer of defendant's device has taken a bottle cap of the old type, described in the earlier patent to W. Painter, No. 468,-258, February 2, 1892, consisting of a cap of hard metal with a corrugated flange and a sealing disk of cork, a kind of bottle closure in very extensive use, and known as the "Crown Cork and Seal," and for the purpose of preventing contamination of the contents of the bottle, and to prevent leakage through the pores or defects of the cork sealing disk, has applied to the side of the disk which comes in contact with the contents of the bottle a disk of tin foil or a thin sheet of tin.

[1] The defendant relies upon the patented art prior to Recht as disclosing this protective means, and as justifying its use by defendant, irrespective of the patent in suit.

The use of a "thin sheet of pure tin" for this purpose in sealing devices for bottles, jars, and other vessels, is shown in the British patents to Weissenthanner, No. 7,597 of 1893, and No. 13,352 of 1879. The use of tin foil is described in the Laurent British patent, No. 6,920 of 1887, the Jovignot British patent, No. 12,957 of 1902, the United States patent to Chrysler, No. 51,020 of 1865, and other patents.

The District Court said:

"The use of cork disks covered with a tin foil coating was old, as is not denied; such coating being intended to prevent contact between the cork and the liquid contents of the bottle—a contact found liable to injure carbonated or other waters when so contained."

The plaintiff seeks to avoid the disclosures of the prior art by contending that the Recht patent relates to the special art of "crown caps" for bottles, which began with the Painter patent, No. 468,258, and which involves the use of considerable pressure in applying the caps to the bottles.

It seems clear that Painter, the prior patentee of the crown cap, who had invented a new form of bottle cap, could not be deprived of the right to use in connection with that invention the familiar and well-known means of avoiding contamination, which was applicable to the general art of bottle closure upon which he improved. In the present case it appears that the problem of preventing the contamination of the contents of a bottle by a cork, or by reason of imperfections of a sealing disk, had been solved by interposing a sheet of tin between cork and contents.

The mere fact that, after Painter, Recht, or any one else may have been first to do this for a crown cap, does not in the least assist in showing that invention was involved in so doing. Nor does the fact that it has proved very useful, because so many crown caps are used, tend to show invention. It is useful with crown caps, exactly as it was useful with caps of other kinds, and for the same reason.

The idea of using with Painter's new type of cap the same protection—tin—which was commonly used for that purpose was not an inventive idea, unless the new construction presented obstacles to its use nonexisting in old forms and requiring to be overcome by a new idea of means.

The new feature introduced by Recht is said to be "a tenacious metal disk"—i. e., a disk which will not be torn when it is subjected to the considerable pressure used in attaching crown caps to bottles. The patentee says of his protective disk:

"It is of such thickness, usually three to five thousandths of an inch, and of such tenacity that when the requisite pressure is applied for fixing the cap and the metal disk is clamped between the wood disk and the mouth of the bottle the metal disk will properly fold and adjust itself to the mouth of the bottle without tearing and effect a proper sealing contact."

There is no evidence from which it can be inferred that the problem of preventing disruption of a protective disk presented any practical difficulty that required more than ordinary common sense for its solution.

253 F.—28

Assuming that there was presented the problem of providing a lining that would withstand a pressure heavier than that applied to former battle caps, and that this problem was solved by thickening the material already selected by prior art users on account of its insolubility, we are unable to regard this as involving invention.

In estimating the value of the defendant's argument that the patent in suit was for an improvement in a special class of bottle closures, we must remember that the crown cap was an old and complete invention, which in common with other closures uses a cork which comes into contact with the liquid. The means for obviating the direct contact between cork and contents was well known. Tin or tin foil had been selected because of the quality of insolubility, and it performed the protective function in the devices of the prior art exactly as in the crown caps protected by the same kind of substance. The fact that there are many patents for other means of protection for corks, whether in crown caps or in caps of other kinds, and that various experiments were made to find other means, does not detract from the fact that tin was already described in prior patents, relating to the art of sealing devices for bottles and other vessels, as suitable for this purpose.

[2] In considering the claims of a first improver upon a specific device when asserted against third persons it is often useful to inquire whether his claims could have been asserted by the improver against the inventor and patentee of the specific device upon which the improvement was made. The inventor of a specific improvement in the art of sealing bottles does not by securing an improvement patent cut off himself or others from resort to the prior art upon which he improved. That he established a new art or subart by his species improvement must be shown by contrasting what he did with the devices of the prior art upon which he improved. Upon the question of the scope of his invention the prior art may be cited against him, and against all improvers upon his specific device. The crown cap patents do not begin that branch of the art of bottle closure which has to do with protection interposed between cork and contents. This is an old and special feature of the general art, and in order to show that what was old when applied to other structures is new when applied to a crown cork we must consider first whether any new function was effected. So far as appears, the function of the insoluble tin was the same as before.

We may next inquire whether there was any mechanical difficulty in applying tin to a crown cap which did not exist in applying it to prior devices, and which had to be overcome by inventive skill. It is said that, as the crown cap was subjected to greater pressure, it had to be made of material sufficiently tenacious to resist that pressure. The Weissenthanner patents and the Jovignot patent show the protective sheet of tin conforming to pressure and adapting its form to the compression of the cork which it covers and keeps from contact with the contents, and are a sufficient indication to a mechanic that the protective sheet must be strong enough to withstand such strains as are used to compress the cork. Aside from this we think it obvious that a protective sheet applied to cork which is to

undergo pressure must be strong enough to withstand the degree of pressure to be applied, and that this would be obvious to any person of ordinary skill who was seeking to apply to crown caps the same kind of protective covering used on caps of other descriptions.

The history of the experiments and failures of others is much relied upon to prove invention. It is true that the argument that apparent simplicity in means shows noninvention may be met by the answer that many tried and nobody thought of it; but this avails nothing against prior patents which describe the means and show that, even if there was reinvention at a later time, there was nevertheless no patentable novelty.

As we are of the opinion that the claims in suit are invalid for want of patentable novelty, it is unnecessary to consider the defenses of double patenting and laches.

The decree of the District Court is reversed, and the case is remanded to that court, with instructions to dismiss the bill. The appellant recovers costs in both courts.